IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CASE NO. 3:19-CV-479

| | |
|---|---|
| JULIE SZULCZEWSKI, | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| COX ENTERPRISES, INC., COX MEDIA GROUP, LLC and WSOC TELEVISION, LLC D/B/A WSOC-TV, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

## NATURE OF ACTION

Plaintiff Julie Szulczewski ("Ms. Szulczewski") files this Complaint against Defendants COX ENTERPISES, INC. ("Cox"), COX MEDIA GROUP, LLC ("CMG") and WSOC TELEVISION, LLC D/B/A WSOC-TV ("WSOC") for damages for injuries Plaintiff has sustained as a result of Defendants' unlawful discrimination and retaliation against Plaintiff on the basis of gender, age, and disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., ("ADA"), Americans with Disabilities Act Amendments Act of 2008 ("ADAA"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 ("ADEA"), the North Carolina Equal Employment Practices Act, NC 6.S. 143-422.2, et seq and all other applicable federal, state and local statutes.

## PRELIMINARY STATEMENT

On March 8, 2018, Plaintiff, a highly regarded and successful News Director at WSOC in Charlotte, North Carolina, was summarily and unlawfully dismissed from her job to make room

for a younger, less successful male. In today's world, a talented female professional must still contend with the boys' club mentality condoned by some employers, like the Defendants, who condone the actions of their male managers when they band together to smear the reputation of an older female colleague to protect one of their own.

Ms. Szulczewski was blindsided by her employer, the Defendants, to whom she had been loyal for 20 years and for which she had transformed an underperforming news team into a thriving news media outlet. The Defendants took advantage of Ms. Szulczewski when she was vulnerable, just as she returned from medical leave for surgery to her knee, an injury sustained while at work. The Defendants used the opportunity to falsely accuse the Plaintiff and smear her reputation with lies, at a time when she was just coming back to work and unprepared for the unjustified and calculated attack on her reputation and character. This was done by the Defendants specifically to justify the unlawful termination of Plaintiff's employment shortly thereafter. This was a pitiful attempt to cover up the inexplicable firing of an employee who was a rising star, in Cox's leadership program, groomed for further promotion and a leader who guided her team to produce Emmy worthy news content just days before she was fired.

The Defendants rewarded Ms. Szulczewski's stellar work and loyalty with lies to further the agenda of a group of younger male managers and condoned their misconduct to further that agenda. They justified this unlawful behavior with lies that could destroy Ms. Szulczewski's unblemished professional reputation and irreparably harm her career. They did this just to give a younger male employee Ms. Szulczewski's position and keep the boys' club at CMG and WSOC happy. In today's world, this should no longer happen. It is for this reason that Ms. Szulczewski has commenced this action against the Defendants.

# PARTIES, JURISDICTION & VENUE

1. Defendant COX ENTERPRISES, INC. ("Cox") is a privately held global corporation with its principal place of business and headquarters in Atlanta, Georgia that employs approximately 55,000 employees, with $21 billion in total revenue. Cox's primary operating subsidiaries are Cox Communications, Cox Automotive and Cox Media Group. Cox's has business operations in North Carolina, through its subsidiaries and is registered in that state for service of process at Registered Corporation Service Company 2626 Glenwood Avenue, Suite 550 Raleigh, NC 27608.

2. Defendant COX MEDIA GROUP, LLC ("CMG"), a wholly owned subsidiary of Cox, with its principal place of business in Atlanta, Georgia, that owns radio and television stations and newspapers. CMG operates WSOC Television, LLC in Charlotte, North Carolina and is registered in that state for service of process at Registered Corporation Service Company 2626 Glenwood Avenue, Suite 550 Raleigh, NC 27608.

3. Defendant WSOC TELEVISION, LLC D/B/A WSOC-TV ("WSOC") is a wholly owned Federal Communications Commission licensed media outlet, brand and subsidiary of Defendant COX, with its principal place of business located at 1901 North Tryon Street, Charlotte, NC 28206.

4. WSOC acted in concert with COX, CMG, and/or others as it relates to the unlawful conduct alleged herein.

5. Ms. Szulczewski is a fifty-two (52) year old, Caucasian female. She resides in Alabama.

6. Ms. Szulczewski was employed as the News Director at WSOC until March 8, 2018.

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and/or other law. Claims are asserted under the laws of the United States as well as pursuant to 28 U.S.C. § 1343(a)(4), in that claims are asserted under a law providing for the protection of civil rights. Further, this action asserts federal questions under Title VII, the ADA and the ADEA.

8. The Court has supplemental jurisdiction over the claims brought under North Carolina law pursuant to 28 U.S.C. § 1367.

9. Venue lies in this Court pursuant to 28 U.S.C. § 1391 and/or other law. The acts and omissions giving rise to the causes of action alleged herein occurred in this District.

10. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 10, 2018.

11. The EEOC issued a Notice of Right to Sue dated June 27, 2019.

12. Plaintiff commenced this action within 90 days of receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

13. Plaintiff is female and currently fifty-two (52) years old.

14. After twenty (20) years of employment with the Defendants, Plaintiff was fifty (50) years old when the Defendants terminated her employment as the News Director for WSOC in Charlotte, North Carolina on March 8, 2018.

15. Plaintiff was first hired by Defendant Cox/CMG in 1997 as an Executive Producer for Cox television station WFTV in Orlando, Florida.

16. Plaintiff was promoted by the Defendants to the position of Managing Editor for Cox television station WSOC in Charlotte, North Carolina in 2007.

17. In 2010, Plaintiff briefly left her employment with the Defendants until the

Defendants hired Plaintiff back as the News Director for WSOC in Charlotte, North Carolina in 2011.

18. Plaintiff held that position until the Defendants terminated her employment in March 2018.

19. During her employment with Defendants, Plaintiff was a respected, valued and high performing employee.

20. When Plaintiff's employment with Defendants was terminated, Plaintiff was one of the longest tenured News Directors employed by Defendants.

21. During Plaintiff's time and leadership of the WSOC news team in Charlotte, that television station thrived and received accolades as a top news producing entity, locally and nationally.

22. Plaintiff was able to manage and develop the WSOC news team into a thriving news outlet despite multiple expense cuts which prevented Plaintiff from filling several critical open positions at WSOC and left the station understaffed.

23. Plaintiff received praise from her supervisors for her leadership and performance at WSOC and in 2017, Cox Executive Vice President Jane Williams recommended Plaintiff to participate in the Cox Leadership Program where Plaintiff would be groomed by Cox for higher level leadership positions in the organization. Plaintiff was the only News Director in the program that year and she participated until she was fired in March 2018.

24. On February 6, 2017, Plaintiff was offered a renewal of her employment contract for the News Director position at WSOC for three more years from April 13, 2017 to April 14, 2020.

25. Plaintiff accepted the offer on February 27, 2017 and her new employment

agreement was signed by her then supervisor, CMG Vice President and General Manager Joe Pomilla on March 3, 2017.

26. At the time, senior leadership at Defendants Cox and CMG commented to Plaintiff that they expected she would soon be promoted to the next leadership level position for her at Cox, General Manager.

27. In March 2017, another employee at WSOC under Plaintiff's supervision filed an internal complaint against Plaintiff with Defendants.

28. That employee had significant and documented performance issues on which Plaintiff had counseled the employee before the employee filed a complaint.

29. Plaintiff cooperated with the Defendants' internal investigation into the matter and heard nothing more about the investigation, which she reasonably believed had been resolved.

30. In September 2017, Plaintiff went on an Outward Bound trip, part of the Cox leadership program curriculum, in the mountains of Western North Carolina. While hiking the mountain during that trip, Plaintiff tore the ACL in her right knee, a painful injury.

31. After consulting with a physician, Plaintiff was informed that the injury to her knee required surgical repair and post-surgical rehabilitation for which Plaintiff had to take medical leave.

32. Rather than schedule and undergo that surgery immediately, Plaintiff, a loyal and dedicated employee for the Defendants, postponed the surgery several months until December.

33. Plaintiff chose to delay her surgery so that she could lead her team at WSOC through the November ratings sweeps, a critical period for television stations and news departments.

34. At the end of November 2017, Plaintiff's direct supervisor Joe Pomilla was

transferred to the poorly performing Cox/CMG Boston television station.

35. Defendants' Regional Vice President, Ray Carter, who at the time had recently been promoted to that position, replaced Pomilla as General Manager with Cedric Thomas in December 2017.

36. Thomas, who had been a General Sales Manager in Pittsburgh and had worked with Carter there, became the General Manager of WSOC in Charlotte and supervisor over Plaintiff.

37. Both Carter and Thomas are male, Thomas is younger than Plaintiff and neither had any medical condition requiring medical leave.

38. Plaintiff went out on medical leave in December 2017 for surgery to her right knee.

39. Before she went on leave, Plaintiff had no interaction with Thomas.

40. Plaintiff returned to work from her medical leave on January 22, 2018.

41. As soon as Plaintiff returned to work, she was summoned to a meeting with Thomas and the employee who made a complaint against Plaintiff back in March 2017.

42. Thomas informed the Plaintiff that he wanted to "resolve any tension" between Plaintiff and the employee, after which Plaintiff advised Thomas that she believed she could not provide any constructive feedback to this employee for fear that it would be misconstrued and used against Plaintiff in any continued investigation.

43. Thomas asked Plaintiff about the status of the investigation, and Plaintiff informed him that she had not heard anything about it for months, to which he responded that if Plaintiff had not heard anything else, then the matter was over and Plaintiff should not worry about it.

44. Plaintiff went back to her regular duties as News Director for WSOC and regularly interacted with Thomas and Carter without incident.

45. The station was busy with the February ratings book and Olympics coverage in

2018 when the Reverend Billy Graham died on February 21, 2018.

46. Plaintiff and her news team took on the enormous task of covering this news event which culminated with a 24-hour news cycle of coverage for Reverend Graham's funeral processional from the mountains in Asheville back to Charlotte on February 24, 2018 and then hours more coverage into the next week for the Reverend's funeral on March 2, 2018.

47. Plaintiff and her news team received praise and accolades for the work they did on this coverage, which resulted in Emmy consideration for WSOC News.

48. On March 6, 2018, Carter and Thomas both came to Charlotte to take the entire news team out to dinner to congratulate them on their work on news coverage of the Reverend Graham's funeral and the tremendous ratings won for the station.

49. The very next day, on March 7, 2018, Plaintiff was summoned to a "strategy meeting" at the Embassy Suites in Charlotte.

50. When Plaintiff arrived for the meeting, Thomas was present with a human resources corporate investigator.

51. During the meeting, the investigator confronted Plaintiff with several untrue and unfounded accusations of misconduct about which she had never previously been informed.

52. The investigator accused Plaintiff of having inappropriate relationships with four male employees of Defendants, which was not true, nor did the investigator provide any evidence to support this unfounded allegation.

53. The investigator also accused Plaintiff of going out on a date with a male employee and inappropriately touching a male employee on the thigh during a party at Plaintiff's home in December 2017.

54. The investigator further accused Plaintiff of inappropriately yelling at an Art

Director back in 2012 and inappropriately taking photographers out for drinks and appetizers in 2013 although Plaintiff's supervisor had just approved an outing. Notably Thomas had approved and encouraged expenditures for Plaintiff to take employees out for dinner and drinks after they were done covering Reverend Graham's funeral just a few days before this meeting.

55. The incident with the Art Director had been dealt with in 2012, and Plaintiff had not been disciplined at the time.

56. The other occasion about which Plaintiff had been accused of inappropriately taking employees out occurred with the full knowledge of Plaintiff's prior supervisor and with their consent.

57. In fact, these types of outings were encouraged to boost team morale and bonding, particularly after challenging assignments like the Graham funeral coverage.

58. No inappropriate behavior or misconduct occurred during those outings, nor had any employees raised any complaints with Plaintiff before the meeting.

59. Plaintiff also explained to the investigator, that the "date" was actually an occasion when she attended a play in which one of the station's meteorologist's performed and that there had been no holiday party at Plaintiff's home while she was out on medical leave in December.

60. The investigator also asked Plaintiff about a reporter, implying that she had engaged in a sexual relationship with the reporter, to which Plaintiff explained that she was friends with the reporter and his wife and had plans to attend their daughter's Bat Mitzvah that weekend.

61. Despite Plaintiff's explanations indicating that none of the accusations raised by the investigator were true or had any merit, the investigator took Plaintiff's employee badge and instructed her not to contact anyone until the "investigation" was over.

62. Plaintiff was summoned back to another meeting at the hotel the next day on March

8, 2018 when General Manager Cedric Thomas informed her that her employment was terminated.

63. Plaintiff was handed a letter which stated that Defendants had decided to "opt out of the remainder" of her contract, effective April 12, 2018.

64. Notably, although Plaintiff had been wrongly and falsely accused of several instances of misconduct in the meeting just one day before, Defendants did not choose to cite the clause in Plaintiff's employment contract addressing misconduct as a reason for terminating her employment.

65. Right before this meeting, Plaintiff was informed that Michael Olivera, who had been the News Director at the failing Boston television station and had previously worked with Thomas and Carter at a Cox station in Pittsburgh, was coming to the Charlotte station.

66. Olivera is male and approximately thirty-five (35) years old.

67. Plaintiff was fired the day before it was announced that Olivera was coming to Charlotte.

68. Olivera replaced Plaintiff as the News Director for WSOC in Charlotte.

69. Two of the male employees that Plaintiff was accused of inappropriately interacting with were never interviewed by human resources, nor were many of the other employees in her department.

70. In fact, many of the employees in Plaintiff's news division had no idea why Plaintiff was suddenly terminated right after she returned from her medical leave.

71. After Plaintiff's employment was terminated, the station submitted an application for Emmy consideration for the coverage of Reverend Graham's funeral led by Plaintiff and her news team.

72. Thomas, however, refused to include Plaintiff's name on the Emmy submission

even after Plaintiff offered to pay her portion of the entry fee.

73. Before the meeting on March 7, 2018 when Plaintiff was wrongly and falsely accused of multiple instances of prior misconduct, Plaintiff had a stellar reputation and performance record with her employer. WSOC thrived under her leadership.

74. Defendants terminated Plaintiff's employment to make room for a younger, male employee, with no known medical issues, favored by Plaintiff's supervisors, who needed to be rescued from a failing Cox station in Boston.

75. Plaintiff was unable to find new employment until August 2019 when she obtained work as a New Director for a television station in Huntsville, Alabama for much less compensation than what she earned and was due under her employment contract with the Defendants.

76. Plaintiff suffered months of emotional distress due to the false accusations made against her and used by Defendants to wrongfully terminate her employment with discriminatory animus and retaliation for exercising her right to use medical leave for treatment of a physical injury Plaintiff sustained while working for the Defendants.

## FIRST CAUSE OF ACTION
### Gender Discrimination Under Title VII

77. Plaintiff repeats, reiterates and realleges paragraphs 1 to 76 of this Complaint as if fully set forth herein.

78. By the acts and practices described above, Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her gender in violation of Title VII, by using fabricated allegations of sexual harassment, misconduct and inappropriate behavior towards male employees to damage Plaintiff's reputation and concoct a reason to terminate Plaintiff's employment, an adverse employment action, in favor of a less qualified male

employee.

79. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of Defendants' discriminatory acts.

## SECOND CAUSE OF ACTION
## Age Discrimination Under the ADEA

80. Plaintiff repeats, reiterates and realleges paragraphs 1 to 79 of this Complaint as if fully set forth herein.

81. By the acts and practices described above, Defendants have discriminated against Plaintiff, who was fifty (50) years old at the time of the acts complained of herein, in the terms and conditions of her employment on the basis of her age in violation of the ADEA. Defendants used fabricated allegations of sexual harassment, misconduct and inappropriate behavior towards male employees to damage Plaintiff's reputation and concoct a reason to terminate Plaintiff's employment, an adverse employment action, in favor of a less qualified and significantly younger male employee.

82. Plaintiff is now suffering and will continue to suffer irreparable injury; monetary damages; and damages for mental anguish and humiliation as a result of Defendant's discriminatory acts.

## THIRD CAUSE OF ACTION
## Disability Discrimination Under the ADA and ADAA

83. Plaintiff repeats, reiterates and realleges paragraphs 1 to 82 of this Complaint as if fully set forth herein.

84. By the acts and practices described above, Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her being "regarded as"

disabled, in violation of the ADA and ADAA in that Plaintiff, after postponing medical leave for the benefit of Defendants and immediately upon her return from medical leave, was presented with fabricated and unfounded allegations of misconduct to justify the termination of her employment. Plaintiff had not requested any accommodation and she was fully able to perform the essential functions of her job with or without accommodation but was nonetheless terminated upon her return to work without justification.

85. Plaintiff is now suffering and will continue to suffer irreparable injury; monetary damages; and damages for mental anguish and humiliation as a result of Defendant's discriminatory acts.

## FOURTH CAUSE OF ACTION
### Gender, Age and Disability Discrimination
### In Violation of North Carolina State Law

86. Plaintiff repeats, reiterates and realleges paragraphs 1 to 85 of this Complaint as if fully set forth herein.

87. By the acts and practices described above, Defendants have discriminated against Plaintiff in the terms and conditions of her employment and by acting adversely against Plaintiff on the basis of Plaintiff's gender, age and "regarded-as" disability, as described above, against public policy as defined in and in violation of the North Carolina Equal Employment Practices Act, NC 6.S. 143-422.2, et seq.

88. Plaintiff is now suffering and will continue to suffer irreparable injury; monetary damages; and damages for mental anguish and humiliation as a result of Defendants' discriminatory acts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an award:

(a) directing Defendants to pay Plaintiff compensatory damages, in an amount that exceeds the jurisdictional minimum of this court, including, but not limited to back pay, front pay and benefits;

(b) directing Defendant to pay Plaintiff punitive damages;

(c) directing Defendant to pay an additional amount to compensate Plaintiff for the emotional distress and reputational damage Defendants' unlawful conduct has caused Plaintiff, an amount that exceeds the jurisdictional minimum of this court

(d) awarding Plaintiff such interest as is allowed by law;

(e) awarding Plaintiff her reasonable attorneys' fees and costs; and

(f) granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully submitted this 25th day of September, 2019.

THE NOBLE LAW FIRM, PLLC

/s/ Laura L. Noble
Laura L. Noble (N.C. Bar No. 38691)
Christine A. Rodriguez (N.C. Bar No.54143)
141 Providence Road, Suite 210
Chapel Hill, N.C. 27514
Telephone: (919) 251-6008
Facsimile: (919) 869-2079
lnoble@thenoblelaw.com
crodriguez@thenoblelaw.com
*Attorneys for Plaintiff*