IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19CV479-GCM

| | |
|---|---|
| JULIE SZULCZEWSKI, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| Vs. | )    ORDER |
| | ) |
| COX ENTERPRISES, INC., | ) |
| COX MEDIA GROUP, LLC and | ) |
| WSOC TELEVISION, LLC d/b/a | ) |
| WSOC-TV, | ) |
| | ) |
|     Defendants. | ) |

This matter is before the Court upon Defendant Cox Enterprises, Inc's Motion to Dismiss (Doc. No. 9). The motion is fully briefed and ripe for disposition.

### I.    FACTUAL BACKGROUND

Plaintiff Julie Szulczewski commenced this action against Defendants Cox Enterprises, Inc. ("Cox Enterprises"), Cox Media Group, LLC ("CMG") and WSOC Television, LLC d/b/a WSOC-TV ("WSOC") for employment discrimination related to the terms and conditions of her employment generally, and the termination of her employment specifically, each in violation of Title VII, the ADA, the ADEA, and the Equal Employment Practices Act. (Compl. ¶¶ 7, 8, 77-88.) Plaintiff alleges that Defendants "acted in concert with" one another in violating these statutes. (*Id.* at ¶ 4.)

Defendant Cox Enterprises is a privately held global corporation with its principal place of business and headquarters in Atlanta, Georgia and employs approximately 55,000 employees, with $21 billion in total revenue. (*Id.* at ¶ 1). Defendant CMG is a wholly owned subsidiary of

1

Cox Enterprises, and owns radio and television stations as well as newspapers. (*Id.* at ¶ 2).
WSOC is a subsidiary of CMG and CMG operates WSOC-TV in Charlotte, North Carolina.
(Freeman Decl. ¶ 16; Compl. ¶ 3).[1] All three Defendants share a principal place of business at
6205 Peachtree Dunwoody Road, Atlanta, Georgia. (Rodriguez Decl. pp. 1-2; Doc. Nos. 15, 15-1, 15-2, and 15-3).[2] In addition, CMG, Cox Enterprises, and WSOC share certain officers. (Doc. Nos. 15-3, 15-4, and 15-5).

WSOC employed Plaintiff as a News Director in Charlotte, North Carolina from 2011 until it terminated her employment on or around March 8, 2018. (Compl. ¶ 6). Plaintiff was 50 years old at the time of her termination. (*Id.* at ¶ 14). Plaintiff's termination occurred after an investigation into allegations of Plaintiff's workplace misconduct. (*Id.* at ¶¶ 50-62). Plaintiff's manager at the time of her employment, Cedric Thomas, informed Plaintiff of the termination of her employment (*Id.* at ¶ 62). Ray Carter promoted Mr. Thomas to the position from which he supervised Plaintiff and terminated Plaintiff's employment. (*Id.* at ¶ 35). Both Mr. Thomas and Mr. Carter worked for CMG. (Freeman Decl. ¶ 15). Neither worked for Cox Enterprises. (*Id.* at ¶ 24). Plaintiff filed a Charge of Discrimination with the EEOC against WSOC and CMG but did not name Cox Enterprises in the charge.

Cox Enterprises runs a Leadership Program to identify talented professionals across industries in its companies for promotion opportunities and Plaintiff alleges that in 2017, Jane Williams recommended Plaintiff to participate in the Cox Leadership Program where Plaintiff would be groomed by Cox for higher level leadership positions in the organization. (Compl. at ¶

---

[1] Joe Freeman is Cox Enterprises' Vice President of Employment Law. Cox Enterprises submitted his Declaration in support of its Motion to Dismiss. (Doc. No. 10-1).
[2] Plaintiff has submitted the Declaration of her counsel, Christine A. Rodriguez.

23).[3] In February 2017, Plaintiff was offered a contract renewal for the News Director position for three more years from April 13, 2017 to April 14, 2020. (*Id.* at ¶ 24). Plaintiff alleges that senior leadership at Cox Enterprises and CMG had spoken to the Plaintiff and suggested that they expected she would soon be promoted to the next leadership level position for her, which was General Manager. (*Id.* at ¶26).

In September 2017, while on an Outward Bound trip in the mountains of Western North Carolina that was part of the Cox Leadership Program curriculum, Plaintiff tore the ACL in her right knee, a painful injury that underlies her disability discrimination claim. (*Id.* at ¶30).

Cox Enterprises has moved to dismiss Plaintiff's Complaint against it for lack of personal jurisdiction, failure to state a claim, and lack of subject matter jurisdiction. According to the Declaration of Joe Freeman, Cox Enterprises does not maintain any offices in North Carolina, does not have an interest in any real property in North Carolina, and does not possess real property in North Carolina. (Freeman Decl. at ¶ 5). Cox Enterprises does not regularly do or solicit business in North Carolina, nor does it direct or maintain facilities in North Carolina.[4] (*Id.* at ¶ 6.) Cox Enterprises does not maintain any corporate books or records in North Carolina, does not own, maintain or possess any bank accounts in North Carolina, and does not have income subject to taxation in North Carolina. (*Id.* at ¶ 7.)

In addition, Cox Enterprises does not direct or manage either WSOC's or CMG's business operations or employees. (*Id.* at ¶ 23). Cox Enterprises did not, at any time, employ Plaintiff. (*Id.* at ¶ 24). Cox Enterprises likewise has never managed or directed the work of any

---

[3] In her Complaint at paragraph 23, Plaintiff alleges that Jane Williams is an executive at Cox Enterprises. However, Cox Enterprises requests that the Court take judicial notice of the publicly available executive profile of Ms. Williams, which indicates that she is a CMG employee.

[4] Plaintiff alleges in her Complaint that Cox Enterprises is registered for service of process in Raleigh, North Carolina (Compl. at ¶ 1), however, Plaintiff's counsel's Declaration shows that Cox Enterprises' registered agent is located in Georgia. (Doc. No. 15-3, p. 2).

WSOC or CMG employees, including the employees whose complaints triggered the investigation leading to the termination of Plaintiff's employment, the human resources employee who conducted the investigation into Plaintiff's workplace misconduct, Mr. Carter, and Mr. Thomas. (*Id.*)

## II. DISCUSSION

### A. Standard for personal jurisdiction:

The Court will first address Cox Enterprises' motion to dismiss for lack of personal jurisdiction. Where, as here, the court rules on a 12(b)(2) motion relying on the Complaint, briefs, and affidavits alone, without conducting an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing that personal jurisdiction exists.[5] *See Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018); *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). All relevant pleading allegations must be construed in the light most favorable to the plaintiff. *Id.* However, the Court need not "credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320 (table), 2000 WL 691100, at *1 (4th Cir.2000) (quoting *Ticketmaster–N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994)). In addition, "[b]lanket conclusory allegations as to multiple defendants are insufficient." *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013)

"It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of

---

[5] In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment. *E.g.*, *Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992).

personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001), citing *Stover v. O'Connell Assocs. Inc.*, 84 F.3d 132, 134 (4th Cir. 1996).

North Carolina's long arm statute provides for jurisdiction when a corporation is "engaged in substantial activity within [North Carolina]" or when the corporation's acts or omissions give rise to an action for injury to a person in North Carolina. *See* N.C. Gen. Stat. § 1–75.4. North Carolina's long-arm statute has been construed "to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Christian Sci.*, 259 F.3d at 215, citing *Century Data Systems, Inc. v. McDonald*, 428 S.E.2d 190, 191 (N.C. Ct. App. 1993). Accordingly, "the dual jurisdictional requirements collapse into a single inquiry" as to whether exercising personal jurisdiction comports with constitutional requirements. *See Christian Sci.*, 259 F.3d at 215 (internal citations omitted); *see also Universal Leather, LLC v. Koro AR, S.A,* 773 F.3d 553, 558–59 (4th Cir. 2014).

In turn, "[a] court's exercise of jurisdiction over a non-resident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Human Res. Certification Inst. v. Human Res. Prof'l Ass'n*, 453 F. App'x 349, 350 (4th Cir. 2011), citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *International Shoe's* minimum contacts framework both "protects the defendant against the burdens of litigating in a distant or inconvenient forum" and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980).

A court may exercise either "general jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with [North Carolina]" or "specific jurisdiction over the defendant by demonstrating that the defendant purposely established minimum contacts in [North Carolina] such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts." *See Sneha Media*, 911 F.3d at198 (internal citations omitted).

**B. Personal jurisdiction based on parent-subsidiary relationship:**

Courts applying North Carolina law have long held that the parent-subsidiary relationship is not enough, on its own, to impute personal jurisdiction over the parent company. *See Jim Myers & Son, Inc. v. Motion Indus., Inc.*, 140 F. Supp. 2d 595, 600 (W.D.N.C. 2001); *see also Vision Motor Cars*, 981 F. Supp. 2d at 468 (finding that "[a] parent-subsidiary relationship does not by itself support jurisdiction") (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005)).

Courts have carved out a narrow exception to the general jurisdictional rule regarding parent-subsidiary relationships and have found that the parent-subsidiary relationship, when coupled with the out-of-state's parent's substantial control over the subsidiary's activities, may serve as a basis for asserting jurisdiction over the parent. *See Higgs v. Brian Ctr. Health & Ret./Windsor, Inc.*, 367 F. Supp. 3d 439, 449–50 (E.D.N.C. 2019) (noting that "[g]enerally the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity" but that "[if], however, a parent exercises substantial control over a subsidiary, then a court can impute the subsidiary's contacts with a forum state to the parent") (internal citations omitted); *see also Lianyungang FirstDart Tackle Co. v. DSM Dyneema B.V.*, 871 F. Supp. 2d 482, 488–89 (E.D.N.C. 2012) (finding that "[t]he doctrine of corporate separateness entitles the defendant to a

presumption that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity" and noting that plaintiff may rebut this presumption with evidence "such as a significant degree of control") (internal citations omitted). In doing so, courts applying North Carolina law have looked to the parent's "[c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to [that] transaction had at the time no separate mind, will, or existence of its own." *Krausz Indus. Ltd. v. Smith-Blair, Inc.*, 188 F. Supp. 3d 545, 556–57 (E.D.N.C. 2016) (internal citations omitted).

In determining whether such control exists, courts should examine factors including "inadequate capitalization, non-compliance with corporate formalities, complete domination and control, excessive fragmentation …, non-payment of dividends, insolvency of the debtor corporation, siphoning of funds by the dominant shareholder, non-functioning of other officers or directors, and absence of corporate records." *See id.* at 556. Further, where the parent and subsidiaries preserve "some semblance of independence" then jurisdiction over the parent company is improper. *See Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 687 (M.D.N.C. 2011).

Plaintiff specifically relies on the substantial control exception as the basis of her contention that personal jurisdiction exists over Cox Enterprises. She asserts six allegations as support for her argument: 1) Cox Enterprises, CMG, and WSOC share some officers; 2) the three Defendants shared a principal place of business; 3) Cox Enterprises controlled WSOC and CMG's finances; 4) Cox Enterprises had a group benefit plan that its subsidiaries could participate in; 5) Cox Enterprises held a leadership program that included executives from CMG and WSOC; and 6) a Cox Enterprises' attorney responded to Plaintiff's Charge of Discrimination

7

on behalf of CMG and WSOC. Plaintiff fails to address any of the control factors outlined above. Moreover, Plaintiff has not cited any authority showing her allegations regarding Cox Enterprises' relationship with its subsidiaries, on their own or together, demonstrate the requisite level of jurisdictional control. Indeed, courts have held that two of Plaintiff's purported indicia of control - sharing officers and controlling finances - are not relevant in a jurisdictional control analysis. *See R.T.G. Furniture Corp.*, 825 F. Supp. 2d at 688 (M.D.N.C. 2011) (noting that, for purposes of showing jurisdictional control, "[i]t is not enough that the stock in two corporations is held by the same individuals and that those two corporations share the same officers and directors."); *Pfizer Inc. v. Synthon Holding, B.V.*, 386 F. Supp. 2d 666, 677 (M.D.N.C. 2005) (noting that jurisdictional control requires "complete domination, not only of finances, but of policy and business practice") (internal citations omitted).

Plaintiff also fails to show how her remaining allegations regarding the leadership program, benefit program, and principal business address establish jurisdictional control. For example, Plaintiff does not make any allegations that Cox Enterprises, directly or indirectly, hired, fired, or determined the terms of employment of WSOC or CMG employees based on their participation in, selection for, or non-selection for the leadership program. Further, Plaintiff concedes that though Cox Enterprises' subsidiaries may have shared a principal business address in Atlanta, Georgia, for purposes of corporate formalities, Plaintiff worked for WSOC at its principal place of business in Charlotte, North Carolina - far from Cox Enterprises' Atlanta headquarters. In essence, then, Plaintiff has asked this Court to infer from her bare, conclusory allegations that jurisdictional control exists. However, courts applying North Carolina law have declined to find jurisdictional control based solely on such bare, conclusory allegations. *See Higgs*, 367 F. Supp. 3d at 449–50 (declining to impute the contacts of an affiliated company to

non-resident defendants where plaintiff "[did not] offer[] any evidence that the nonresident entities exert[ed] substantial control over [resident defendant] beyond the conclusory statement that all the defendants… exercise such control."); *see also Lianyungang,* 871 F. Supp. 2d at 488 (holding that plaintiff "failed to establish a basis for exercising personal jurisdiction over [parent]" where plaintiff did not present any evidence, other than parent and subsidiary being "part of the same business group," to support exercise of jurisdictional control).

This is particularly the case where the non-resident parent otherwise shows that it did not control the resident subsidiary. *See Setra of N. Am., Inc. v. Motorcoach Fin., Inc.*, 367 F. Supp. 2d 853, 859 (M.D.N.C. 2005) (finding that, based on affidavits submitted to the court, the subsidiary kept its business records and tax returns separate from those of the parent, the parent did not direct the subsidiary's day-to-day activities, and the subsidiary was engaged in substantial corporate activities which had little or no relation to the parent such that the subsidiary's mere presence in North Carolina cannot be imputed to its parent company for purposes of personal jurisdictional). Cox Enterprises has established that it did not, outside of its ownership interest in WSOC or CMG, control either entity generally or with respect to Plaintiff's employment specifically:

- WSOC manages its own operations, and directs its own employees;

- CMG manages its own operations, and directs its own employees;

- Cox Enterprises does not direct or manage either WSOC's or CMG's business operations or employees;

- Cox Enterprises did not, at any time, employ Plaintiff;

- Cox Enterprises likewise has never managed or directed the work of any WSOC or Cox Media employees, including the employees whose complaints triggered the investigation

9

leading to the termination of Plaintiff's employment, the human resources employee who conducted the investigation into Plaintiff's workplace misconduct, Mr. Carter, and Mr. Thomas;

- Cox Enterprises owns diverse companies engaged in business outside of the media space including automotive services and the communications industry;

- Cox Enterprises does not maintain any offices in North Carolina;

- Cox Enterprises does not have any interest in or possess real property in North Carolina;

- Cox Enterprises does not regularly do or solicit business in North Carolina;

- Cox Enterprises does not direct or maintain facilities in North Carolina;

- Cox Enterprises does not maintain any corporate books or records in North Carolina;

- Cox Enterprises does not maintain or possess any bank accounts in North Carolina; and

- Cox Enterprises does not have any income subject to taxation in North Carolina.

(Freeman Decl. ¶¶ 5-8, 13, 20-21, 23-24.) Courts have routinely held that a parent lacked the requisite jurisdictional control over a subsidiary in such circumstances. *See Higgs*, 367 F. Supp. 3d at 449–50 (holding that plaintiff "failed to make a prima facie showing that the nonresident defendants substantially controlled [subsidiary]" where although the record revealed the defendants owned the subsidiary, the defendants also submitted affidavits showing that they never "operated, managed, or maintained" the subsidiary's nursing home which was the subject of the action); *Lianyungang*, 871 F. Supp. 2d at 488-89 (finding that the court could not assert jurisdiction over the parent company "on the sole basis of [its subsidiary's] continuous actions in the forum state" and differentiating the defendant from cases where the court previously exercised jurisdiction on the basis of the parent company maintaining offices in North Carolina, employing individuals in North Carolina, and making infrastructure plans for its North Carolina

subsidiary); *Setra*, 367 F.Supp. 2d at 859 (holding that plaintiff failed to show requisite control where parent company did not "direct [subsidiary's] day-to-day activities" and parent and subsidiary engaged in "substantial corporate activities" unrelated to one another).

**C. Personal jurisdiction based on joint employer relationship:**

Plaintiff uses the same allegations asserted in support of her "substantial control" argument to contend that Cox Enterprises was a "joint employer" of Plaintiff along with WSOC and CMG. In *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404 (4th Cir. 2015), the Fourth Circuit set forth the following factors to consider when assessing whether an individual is jointly employed by two or more entities: (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employee's duties; (8) whether the individual is assigned solely to the putative employer; and (9) whether the individual and putative employer intended to enter into an employment relationship. 793 F.3d at 414. The most important factors are the power to hire and fire, day to day supervision, and where and how the work takes place. *Id.* at 414-15.

Plaintiff's allegations fall far short of meeting her prima facie burden. Importantly, there is no evidence or factual allegations showing that Cox Enterprises participated in the hiring, firing, disciplining, evaluating, or assigning of jobs to WSOC employees, or otherwise controlled WSOC's daily operations.

The Court finds that Plaintiff has failed to make a prima facie showing that this Court can exercise personal jurisdiction over Cox Enterprises.[6] Because the Court grants Cox Enterprises' Motion to Dismiss for lack of personal jurisdiction, the Court finds it unnecessary to address the motion with regard to subject matter jurisdiction and failure to state a claim.

IT IS THEREFORE ORDERED that Defendant Cox Enterprises' Motion to Dismiss is hereby GRANTED.

Signed: April 6, 2020

Graham C. Mullen
United States District Judge

---

[6] In her brief in opposition to Defendant's Motion to Dismiss, Plaintiff requests leave to file an attached proposed amended complaint "to further clarify and corroborate Plaintiff's alleged facts." (Doc. No. 14, p.17; Doc. No. 16-1). However, the proposed complaint falls short of assisting Plaintiff in satisfying her burden to show personal jurisdiction over Cox Enterprises. Accordingly, her request is denied.